UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

Case No. 1:05-cr-10117-WGY

v.

ORLANDO FRIAS-ORTEGA,
          Defendant.

MOTION FOR DEPARTURE/MITIGATION
 AND SENTENCING MEMORANDUM

Motion

N O W   C O M E S  defendant, Orlando Frias-Ortega, by his counsel, and respectfully moves the Court pursuant to the Fifth and Sixth Amendments to the US Constitution and the law discussed below for mitigation of US Probation's calculation of the Guidelines sentence.

Preliminary

Mr. Frias is a 38 year-old Dominican national with three minor children, all born in the United States.  Mr. Frias' history of re-entry is connected with his US-born children and his legal-permanent-resident family.  His Boston Municipal Court criminal history is overstated, comprising guilty pleas to domestic and minor drug distribution offenses in exchange for release.  The 1994 and 1995 drug offenses involved minor amounts of cocaine, one conviction involving drugs in the automobile of another.  The complainant in the domestic matters is conciliatory and asks the Court for a lesser sentence.  (See September 26, 2005 letter of Luz Colon, Ex. A.)  US Probation now estimates a 70 - 87 month

1

Guidelines sentence on an adjusted offense level 21, Criminal History Category V.  See, PSR ¶ 88.

Mr. Frias requests a six-level departure and mitigation for extraordinary family circumstances and illegal reentry for family reasons based on his motivation for re-entry and the ill health and vulnerability of his family.  He requests an additional two-point mitigation of his offense level adjustment under USSG §2L1.2(b)(1)(A)-(B) because the offense of deportation is overstated.  He also requests a two-category horizontal departure from category V to Criminal History Category III under USSG §4A1.3 on the ground that his category overstates the seriousness of prior offense conduct.  The defense requests sentencing at level 13, category III, for an 18-to-24-month sentence.

## FACTS

Defendant, Orlando Frias, is a 38 year-old citizen of the Dominican Republic.  (PSR coversheet.)  He is the fifth of nine children born into a rural laboring family from Barraquito, DR living in bearable rural poverty - e.g., the family "sometimes went hungry".  PSR ¶¶45 - 48.  Mr. Frias graduated from high school with a trade education in automobile and auto body repair and used that trade when he came to the United States in 1989.  His father and mother, a brother and a sister reside in the US as permanent resident aliens.  Mr. Frias was deported in 2001 at the time of his youngest son Xavier's birth for a 1994 Dorchester court cocaine distribution conviction, *i.e.*,  "committing acts which constitute the essential elements of, as defined in [sic] section 102 of the

Controlled Substances Act, 21 USC 802".  (See attached "Notice to Appear in removal proceedings under section 240 of the Immigration and Nationality Act", File No. A93 004 672, Ex. B.)[1]

Defendant has two US-born children born from his relationship with Luz Colon (40)(an American citizen).  PSR ¶ 56.  The children are Joleen Colon, aged 12, and Orlando Colon, aged 10.  Mr. Frias has second son named Xavier Frias, aged 4, by Mirabel Robles (32).  PSR ¶ 65.  Xavier has a heart defect but is in stable health.  PSR ¶ 66.  The relationship with Ms. Robles has endured the stresses of Mr. Frias' incarceration and she and Mr. Frias are in regular contact. PSR ¶ 66.  Ms. Robles and Mr. Frias speak every day and she is "100% supportive".   PSR ¶ 66.

Until his arrest, Mr. Frias was highly involved in his family life.  Up to the time of Mr. Frias' deportation in 2001, Ms. Robles and Mr. Frias lived together in Hyde Park in a two-bedroom apartment.  (See, November 16, 2001 Affidavit of Mirabel Robles, submitted in connection with deportation proceedings, Ex. C). They subsequently lived together after re-entry until his arrest on May 9, 2005.

---

[1] Probation contends incorrectly that Mr. Frias was deported for a "crime of violence".  The record counsel obtained from the government in discovery indicates that Mr. Frias was deported for a Controlled Substances Act violation.  (See,  May 4, 2005 indictment, Docket Item # 1 and "Notice to Appear… [etc.] File No. A93 004 672.)  The distinction may be significant if the Court finds that Mr. Frias' sentence in Dorchester Court Docket No. 94-07-CR-1661 qualified under USSG §4A1.1 (b)(less than 13 months).   The docket entry, however, reads "2 yrs. cmtg" after defendant's admission to sufficient facts and "2 years H. of C. Comm., Anderson, J."  See, *United States v. Carrasco-Mateo*, No. 03-1553 (1 Cir. 11/23/2004) citing *United States v. Mendez-Villa*, 346 F.3d 568, 570 (5th Cir. 2003) (noting that the plain language of Application Note 1 does not include parole); *United States v. Rodriguez-Arreola*, 313 F.3d 1064, 1066 (8th Cir. 2002) (holding that "in this guideline, as in federal criminal law generally, the term 'sentence imposed' means the sentence reflected in the criminal judgment").

Ms. Robles describes Mr. Frias as a devoted parent who is "a great father and husband".  Robles Affidavit, ¶ 13.  His two older children were usually with Mr. Frias and Ms. Robles three days a week and sometimes "a whole week".  Robles Affidavit, ¶ 6.  She confirms that Mr. Frias "gives the mother of his other children money every week to support them".  Robles Affidavit, ¶ 8.

When Mr. Frias first arrived in the United States in 1989, he lived in Jamaica Plain and he has been in the Boston area all his time in the US.  According to his sister, Felicia Frias, he worked with her in a North End nursing home as a kitchen assistant.  PSR ¶ 82.  He then lived with Ms. Colon beginning 1991 and sometime later, approximately 1995, Mr. Frias began working full time as an auto body mechanic.  PSR ¶¶ 78 & 80.  He had regular hours on weekdays, 7 to 4.  (See Robles Affidavit, ¶ 6.)

Mr. Frias has three convictions for conduct against Ms. Luz Colon, one each in 1996, 1997 and 1998, two for "guilty probation" and one for three months committed.  Mr. Frias had a nine-year relationship with Ms. Colon ending in 2000.  There has been no allegation of criminal conduct against Ms. Colon for the past seven years.  Present circumstances (another child and a stable, supportive relationship with Ms. Robles) indicate there is no risk of future criminal conduct in this regard.

The sentences imposed for conduct with Ms. Colon indicate that the offenses were not as severe as the five attributable Criminal History points would indicate - and that some of the reporting of criminal conduct was not

sincere.   PSR ¶¶ 31- 33.  Indeed, it would be difficult to imagine any sitting
Massachusetts judge imposing a "guilty-probation" sentence on credible
information about the conduct reported by Ms. Colon.  The only conviction on
which defendant was adjudged to serve a sentence was the 1996 Dorchester case,
three months on an assault with intent to murder (MGL c. 265, §15), Docket 96-
06-CR- 2588.  This sentence, however, ran concurrently with Mr. Frias' May 23,
1996 revocation of probation on his conviction for Distribution, Class B in Docket
No. 95-07-CR-4430.  The other two domestic offenses were disposed of as "Guilty
Probation" on 97-07-CR-6454 (Abuse, A & B) and 98-07-CR-0037 (Viol. Protect.
Order).

In spite of the foregoing, Mr. Frias admits the damaging effect of these
arrests on his family life with Ms. Colon and the children.   Counsel understood
in an hour-long conversation with Ms. Colon that she feels affection for Mr. Frias
and acknowledged that he provided real material support as a father, even when
she and Mr. Frias did not live together with their children Joleen and Orlando.
(See September 26, 2005 letter of Luz Colon.)   She attributes the stresses on their
relationship to substance abuse.

Mr. Frias' state-court drug convictions do not warrant six points.   He has
three scoreable convictions, all in Dorchester Court, the most recent a CWOF to
simple possession and two older convictions for cocaine distribution.  The docket
sheets of the 1994 (94-07-CR-1661)(Ex. D) and 1995 (95-07-CR-4430)(Ex. E)
prosecutions indicate that both offenses were in the same Court (Dorchester,

"07") in the same period in spring of 1995.  Ordinarily, two offenses should be

pled on the same day.  This would have resulted in the computation of only one

offense.  §4A1.2 , note 3, reads in pertinent part as follows:

> 3. <u>Related Cases</u>. Prior sentences are not considered related if they
> were for offenses that were separated by an intervening arrest (<u>i.e.</u>,
> the defendant is arrested for the first offense prior to committing
> the second offense).    Otherwise, prior sentences are considered
> related if they resulted from offenses that …(C) were consolidated
> for trial or sentencing.

Mr. Frias' record shows a significant period is within the language of the

commentary for downward departure of criminal history category.  Counsel

notes Mr. Frias' drug offenses are ten years old and a substantial time passed

without conviction between September 1996 and his deportation (with the

exception of the CWOF for possession.)

The Court should note that Mr. Frias has taken measures to address his

substance abuse and dependency problems.  Counsel attaches a copy of a

certificate showing that Mr. Frias completed a 90-day program.  (Ex. F.)  Mr.

Frias speaks candidly of his substance abuse issues.  PSR ¶¶ 72 - 75.

Counsel has made efforts but failed to obtain a copy of the police report in

the three-point Dorchester Court cocaine distribution prosecution 94-07-CR-1661.

PSR ¶ 29.  The report is not attached to the Dorchester Court's records and no

copy is available through the office of the District Attorney in Dorchester or

Bulfinch Place.  Tapes of the proceedings have long since disappeared in routine

destruction.  Counsel and US Probation contacted the Boston Police Department

records section, without response.  Finally, counsel sent a fax with the cooperation of USP and a follow up call by the AUSA.  BPD did produce two police reports, but not for the 1994 case with the two-year sentence.  PSR ¶ 29.

The 1995 case resulted in a one-year House of Corrections non-mandatory sentence suspended for two and one-half years (later revoked).  (PSR ¶ 30, 95-07-CR-4430, Ex. E.)  There is no evidence of the amount involved in the commission of the offense.  The applicable incident report obtained from BPD Headquarters reads in pertinent part:

> Having received information and conducted a surveillance of the above described suspect, seized 12 P/B's of white powder which was hidden in various locations under the hood of the suspect's M/V.

The continuation sheet indicates that only $250.00 in change and small bills and a beeper (no phone) were taken from defendant.

Mr. Frias says that the weight of the drugs seized turned out to be about three grams and that automobile did not belong to and was not registered to Mr. Frias.  No certificates are available and Mr. Frias should be given credit in the circumstances.  He relates that he pled to the distribution offense for release on the suspended sentence.

ARGUMENT

POINT I:

MITIGATION - RE-ENTRY MOTIVATED BY
CONCERN FOR CHILDREN AND FAMILY

A.    Re-entered to Unite with Children and Family

Mr. Frias is entitled to mitigation of his sentence because re-entered to be with his children and family.  Despite his domestic troubles with Ms. Colon - and she even agrees - Mr. Frias has been a good and highly involved father with his three minor children.  Ms. Robles is particularly dependent on his help because Xavier (aged 3) has health troubles and she has little earning capacity.  She had to go to a homeless shelter when Mr. Frias was deported at the time of Xavier's birth.  (PSR ¶65.)  Mr. Frias also has his parent and sister in the Boston area and his father is in ill health.

B.    *Booker* and Mitigation

As this Court has read on many occasions since January 12 this year the Supreme Court has held that the United States Sentencing Guidelines (the "Guidelines") are advisory only and not mandatory.  *U.S. v. Booker,* 125 S.Ct. 738 (2005).  This Court now should consider all statutory factors before making a sentence that is ***"sufficient but not greater than necessary"*** to effect the purposes of the Sentencing Reform Act.   In the portion of the plurality opinion, authored by Justice Breyer, the Court held that the proper remedy, in light of the Court's

8

Sixth Amendment holding, is for the Court to strike the language from the SRA that made the Guidelines mandatory. The Guidelines thus become "effectively advisory" in all cases, including those in which there are no Sixth Amendment-offending enhancements. As a result, the Guidelines have one factor among several that sentencing courts are required to consider in imposing a sentence that is "sufficient but not greater than necessary" to achieve the purposes set forth in 18 U.S.C. §3553(a)(2). See, *Booker*, 125 S.Ct. at 790 (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determinations).

> The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

*U.S. v. Jaber,* 362 F.Supp.2d 365  (D. Mass. 2005) ("*Booker* plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases") *see also* 18 U.S.C. § 3661( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in  *Booker* 125 S.Ct. at 758).

The statutory factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the

sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Id*; *Booker*, 125 S.Ct. at 764.  The term "departure" is now, therefore, a term with imprecise legal meaning.  *See* Dissent of Justice Stevens in <u>Booker</u>, 125 S.Ct.  at  788 ("there can be no departure from a mere suggestion.").

C.      Re-entry Cases and Mitigation

1.      Family Needs

Mr. Frias' children and family need him and he desires to be with them.  It is objectively beyond dispute that Mr. Frias' re-entry is motivated by the desire to help and be with them.  As the PSR indicates, Mr. Frias had a great many worries to account for this offense and his attempted illegal re-entry at JFK, New York in 2002.  His son Xavier was born around the time of his deportation in early 2002.  Xavier and his mother Mirabel were destitute and moved to a shelter after Xavier's birth.  Defendant's father suffers from heart trouble and his mother has

no employment history outside the home.  PSR ¶¶ 50 & 51.  His older children

Joleen and Orlando's need for support also continued unabated.

Counsel is not presently aware of a reported illegal re-entry case in this

District offering mitigation for a defendant seeking reunification with a needful

family.  (But see extraordinary family circumstances in First Circuit, next

paragraph, *infra*.)  Other Circuits and Districts have noted these factors as a valid

reason to mitigate a Guidelines sentence.  See, e.g., *U.S. v. Bernal-Aveja*, 414 F.3d

625 (6 Cir. 2005) (in illegal reentry case where guideline 57-71 months, case

remanded because of *Booker* where District Court expressed sympathy for

defendant who wanted to be near his four children in Ohio); *U.S.  v. Alba*,

(unpublished), No. 01-2510, 2002 WL 522819 (3 Cir. April 8, 2002) (where

defendant illegally reentered country to visit his 16 year old son, five level

downward departure proper); *U.S.  v. Barajas-Nunez*, 91 F.3d 826 (6 Cir. 1996)

(not plain error to depart under lesser harms provisions of §5K2.11 where

defendant had illegally reentered country after having been deported when he

believed his girlfriend was in grave danger of physical harm and wanted to

obtain surgery for her); *U.S.  v. Singh*, 224 F.Supp.2d 962 (E.D.Pa. 2002) (where

defendant illegally reentered in order to visit his dying mother and only

intended to stay in country one week – as evidenced by airline ticket—departure

from 37 months to 21 months proper).

As a general matter, the effect of a sentence of incarceration on children

has been an acknowledged grounds for departure in this Circuit in the form of

extraordinary family circumstances.  See, *e.g.*, *U.S.  v. Sclamo*, 997 F.2d 970 (1 Cir.

1993) (affirmed downward departure from 24-30 month range to six months

home detention for defendant living with a divorced woman and her two

children; had developed special relationship with woman's son that ameliorated

son's behavioral problem, and son likely to regress if defendant incarcerated);

*U.S.  v. Rivera*, 994 F.2d 942, 952-54 (1 Cir. 1993)(Breyer, J.)(Guidelines neutral to

issues of poverty, but family circumstances of single mother to four children

valid reason to depart) citing *US v. Rushby*, 936 F.2d 41, 42 (1 Cir. 1991); *US v.

Johnson*, 964 F.2d 124, 128-30 (2 Cir. 1992) (sole responsibility for raising four

children); *US v. Alba*, 933 F.2d 1117, 1122 (2 Cir. 1991) (twelve-year marriage, two

children, living with disabled, dependent father and grandmother); *United States

v. Pena*, 930 F.2d 1486, 1494-95 (10 Cir. 1991) (single parent of infant and sole

supporter of sixteen-year-old daughter and daughter's infant); *US v. Big Crow*,

898 F.2d 1326, 1331-32 (8 Cir. 1990) (solid family and community ties and

"consistent efforts to lead a decent life in [the] difficult environment" of an Indian

reservation); *US v. Gaskill*, 991 F.2d 82 (3 Cir. 1993).

> 2.    Predicate Offenses Overstated

A number of Circuits have found that overstatement of predicate offenses

is a valid ground for downward departure.  *U.S. v. Lopez-Zamora* , 392 F.3d 1087

(9 Cir. 2004) (even for illegal reentry after  November 1, 2001 (when USSG 2L1.2

was amended) district court may grant downward departure where underlying

felony conviction was minor—but no abuse of discretion here); *U.S.  v.*

*Sanchez-Rodriguez*, 161 F.3d 556) (9 Cir. 1998) (*en banc*) (district court acted within its discretion when it departed downward in an illegal re-entry case by 3 levels from 77 to 30 months on the grounds (1) that the prior aggravated conviction was only a $20 heroin sale; and (2) that the delay in bringing the federal charge prejudiced the defendant's opportunity to obtain a sentence concurrent to the state sentence he was already serving); *U.S. v. Castillo-Casiano*, 198 F.3d 787 (9 Cir. 1999) (district court's failure to consider nature of prior felony plain error); amended, 204 F.3d 1257 (9th Cir. 2000); *U.S. v. Cruz-Guevara,* 209 F.3d 644 (7 Cir. 2000) (defendant's only prior felony conviction was for "aggravated criminal sexual abuse of a minor," a consensual sex act between defendant (age 18) and his girlfriend (age 16).) ; *U.S. v. Diaz-Diaz*, 135 F.3d 572 (8 Cir. 1998) (court upheld downward departure from 63 to 10 months because 16-level adjustment overstated the seriousness of prior which involved sale of 8.3 grams of marijuana for which D received 22 days jail).

POINT II:

CRIMINAL HISTORY OVERSTATES
SERIOUSNESS OF RECORD

Mr. Frias requests a "horizontal departure" to category III because "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history **or** the likelihood that the defendant will commit other crimes, a downward departure may be warranted". (USSG §4A1.3. <u>Departures Based on Inadequacy of Criminal</u>

History Category.)  Long acknowledged as an encouraged departure, this Court

should find the defendant's criminal history is overstated and deserves

mitigation.  The departure sought is of an encouraged category expressly

authorized by the Guidelines.  See, *United States v. Delgado-Reyes*, 245 F.3d 20 (1st

Cir. 2001) (citing *Perez* as a case that "recognize[es] that "departures for atypical

criminal history are specifically encouraged under U.S.S.G. § 4A1.3.")

> We have no quarrel with the principle that there may be downward departures because of individual circumstances in literal career offender cases that indicate the absence of recidivism.  Cf. *United States v. Collins*, 122 F.3d 1297, 1306-07 (10th Cir. 1997) (age and infirmity of defendant, and fact that one predicate conviction was close to ten years prior to the instant offense); *United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir. 1994) (combination of defendant's extraordinary family responsibilities, the age of his predicates, the time intervening between the predicates, and his attempts to deal with drug and alcohol problems); *United States v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993) (defendant's age and immaturity at time of predicates, temporal proximity of predicates, and fact that predicates occurred nearly fifteen years before the instant offense); *United States v. Clark*, 8 F.3d 839, 845 (D.C. Cir. 1993) (exposure to domestic violence and childhood abuse that "significantly affected [defendant's] pre disposition to commit his first two crimes"); *United States v. Bowser*, 941 F.2d 1019, 1024-25 (10th Cir. 1991) (defendant's young age at the time of his predicates, close temporal proximity of the predicates, and fact that defendant had been punished concurrently for the predicates); United *States v. Lawrence*, 916 F.2d 553, 554 (9th Cir. 1990) (psychiatrist's testimony that likelihood of recidivism was low).

*United States v. Perez*, 160 F.3d 87 (1 Cir. 1998), fn 10.

Mr. Frias has refrained from criminal conduct since 1998 with the

exception a 2001 CWOF for cocaine.  When his situation is viewed as a whole

and with the passage of time, defendant does not now present as a recidivist and

14

he is entitled to a departure on the notion that the criminal record is over represented. Nearly all of his record is seven to eleven years old. He and Mirabel Robles have had a consistent relationship since 2001 surrounding their minor son. While his drug recovery may be imperfect, he acknowledges his disorder and has undertaken two organized treatment programs. He and Luz Colon have managed to cooperate and there has been no conduct even concerning her since 1998.

Departures for overrepresentation of Criminal History Category have not been uncommon in this District. See, *e.g.*, *U.S. v. Wilkerson*, 183 F.Supp.2d 373 (D. Mass. 2002) (where D convicted of distribution of cocaine base, criminal history score of VI over-represented his criminal culpability for purposes of sentencing, and thus defendant entitled to a downward departure to IV and (170 to 120 months) where he had no convictions for crimes of violence, and he had received sentences for prior convictions that just barely triggered scoring under the guidelines); *U.S. v. Lacy*, 99 F.Supp.2d 108, 119 (D.Mass. 2000) (departing where defendant's record "largely non-violent", and relatively minor, characterizes "out-of-control addict").

Likewise, other circuits (not just the 9th) have often upheld the departure. *US v. Cuevas-Gomez*, 61 F.3d 749 (9 Cir. 1995) (district court having authority to depart downward where D received 16-level upward adjustment – if court believes criminal history overstated); *US v. Reyes*, 8 F.3d 1379 (9 Cir. 1993) (court upholding downward departure – 210 months to 33 months – from career

offender guidelines – *in both offense level and criminal category* – on grounds that

defendant a comparatively minor offender – 6 minor drug and theft priors); *US*

*v. Brown,* 985 F.2d 478, 482 (9 Cir. 1993) (age at time of prior convictions – DUI's

– proper factors in determining whether career offender status over represents

criminal history); *US v. Lawrence*, 916 F.2d 553, 554 (9 Cir. 1990) (even though

defendant career offender with two drug convictions, low risk of recidivism

justifying downward departure); *US v. Mishoe*, 241 F.3d 214 (2 Cir. 2001)

(horizontal departure in criminal category may be warranted on ground that

prior sentences were lenient); *US v. Collins*, 122 F.3d 1297 (10 Cir. 1997)

(departure from career offender 151-188 to 42 months for 65 year old man with

high blood pressure, heart disease, ulcers and 10 year old conviction overstated

criminal history); *US v. Fletcher*, 15 F.3d 553, 557 (6 Cir. 1994) (departure

downward from career offender to level 29 and category 5 based on age of prior

convictions, age of priors, defendant's responsibilities; affirmed noting district

court can consider age of priors in determining recidivism); *US v. Gayles*, 1 F.3d

735, 739 (8 Cir. 1993) (remanded to permit judge to consider downward

departure; must "consider the historical facts of the defendant's criminal career");

*US v. Shoupe*, 988 F.2d 440, 447 (3 Cir. 1993) (court may consider defendant's age

and immaturity when priors committed in determining that criminal history

(career offender) over represents history); *US v. Bowser*, 941 F.2d 1019, 1024 (10th

Cir. 1991) (age and closeness in time between prior convictions proper basis to

depart downward from career offender); *US v. Senior*, 935 F.2d 149, 151 (8 Cir.

1991) (defendant only 20 years old at time of first predicate offense, receiving

short sentence for second predicate offense drug charges, obvious state did not

consider crimes serious); *US v. Summers*, 893 F.2d 63, 67 (4 Cir. 1990) (affirming

downward departure because OUI's exaggerated criminal history).

POINT III:

ENHANCEMENTS ILLEGAL
UNDER *US v. SHEPARD*

Mr. Frias contends that he is entitled to argue against application of

enhancements under 8 USC §1326(a)(2) for the prior drug conviction named in

his indictment. The instruments of record and the applicable law do not admit of

sufficient particularity to show that the 20-year and not the two-year maximum

penalty for illegal re-entry apply. He relies on the law of the United States as

explained *Shepard v. US*, discussed, *infra*.

Mr. Frias notes a recent decision of the First Circuit directly against this

proposition, though the Circuit will likely be overruled. See, *US v. Ivery*, No. 03-

2496 (1 Cir. 10/20/2005) (challenging ACCA enhancement). Mr. Frias notes the

following from that decision:

> Ivery insists, relying on Justice Thomas's concurrence in *Shepard*,
> that *Almendarez-Torres* is inconsistent with *Apprendi* and *Booker*. See
> *Shepard*, ___ U.S. at ___, 125 S.Ct. at 1264 (Thomas, J., concurring)
> (advising that "in an appropriate case, this Court should consider
> *Almendarez-Torres*' continuing viability"). We disagree. The *Shepard*
> majority noted the possibility that *Apprendi* may eventually be
> extended to require proof of prior convictions to a jury, but
> cautioned that this "is up to the future to show." See *id.*, ___ U.S. at
> ___, 125 S.Ct. at 1263 n.5. As noted above, both *Blakely* and *Booker*

recognized the continued viability of the *Almendarez-Torres* exception. It is not our place to anticipate the Supreme Court's reconsideration of its prior rulings; thus *Almendarez-Torres* remains binding law that we must apply until overruled by a majority of the Supreme Court. *State Oil Co. V. Kahn*, 522 U.S. 3, 20 (1997); see also *Figueroa v. Rivera*, 147 F.3d 77, 81 (1 Cir. 1998).

This Court should not rely on the police reports for determining whether Mr. Frias was "removed subsequent to a conviction for the commission of an aggravated felony, to wit distribution of a control [sic] substance - cocaine, in violation of Massachusetts General Laws chapter 94C, section 32…". (Indictment, Doc. # 1.) See, *Shepard v. US*, 125 S.Ct. 1254 (2005)(holding that only "generic burglary"--committed in a building or enclosed space--is a violent crime under the ACCA; and that a court sentencing under ACCA can look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after a jury trial was for generic burglary in States (like Massachusetts) with broader burglary definitions, but not police reports) ; *US v. Estevez*, 419 F.3d 77 (1 Cir. 2005)(charging document states that defendant "did assault and beat" the victim, characterization placed the offense in the harmful battery type, thereby meeting the definition of a crime of violence for CO purposes); *US v. Jackson*, 409 F.3d 479 (1 Cir. 2005)(cannot rely on police report for determination of crime of violence to determine career offender status).

The term "aggravated felony" is set forth in the definitions section of the Immigration and Nationality Act at USC §1101 (43) and 18 USC § 16. If the Court finds that the complaints for the predicate offenses of indictment do not allow

determination of whether Mr. Frias committed a generic trafficking offense in a controlled substance and was guilty of an aggravated felony, then the applicable statutory maximum sentence is two years under 8 USC §1326(a)(2) and not 20 years under subsection (b)(2) as alleged.

WHEREFORE, defendant prays for an order granting the relief requested.

Dated this 28th day of November, 2005 at Boston, Massachusetts.

Respectfully submitted:

/s./ *Kevin L. Barron*

Kevin Lawrence Barron 550712
Attorney for Orlando Frias Ortega
453 Washington Street 5B
Boston, MA 02111-1325
Tel. No. 617-482-6368
Fax: 617-517-7711
Email: k@lawyerbarron.com

ELECTRONIC FILING

9/26/05

Luz M. Colon
425 Park St #5
Boston MA, 02124
617-282-6532

To hwom it may Consern. this
is Luz colon speaking on behalf of
Orlando Frias Ortega. Father of my
Two kids Joeleen and Orlando Frias-
Colon. Orlando and I both had hour
ups and down but no mather
what happened I stood by orlando.
Because I knew deep down inside
there is a dam good man in him
a very risponsible man. who alway
made shure my kids had Ford always.
check the Cabinet's and refrigorater
for what was missing he didn't
say a thing just walked out the
door and came back with bags
of food in his hands. As far as
grosarys Orlando just has one
problum The Drugs if he can
stop it he would be a perfect
men.

9/26/05

I luz Colon move on with my life. I now Feel like The happiest woman in the world. But it dosent mean that I push Orlando to the side I still give him advice so that he could change his life around. Because nomater what he is and what he is and always will be the father of my Two kids and what ever happens to him will hert me and my kid please don't give him so much Sentence. Give him another change in life just to see if he will change for the better at least for his kids Sake.

Thak you Judge
have a good day

x Luz M Coloro

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No: A93 004 672

In the Matter of:

Respondent: FRIAS, Orlando    AKA:ORTEGA,Orlando    Frias;FRIAS,Orlando;FRIAS-Ortega,Orlando;FIGUEROA, Reinaldo
c/o USINS, Service Processing Center
427 Commercial Street
Boston                                                                   MA        02109        (617) 223-3090
(Number, street, city, state and ZIP code)                                                      (Area code and phone number)

☐ 1. You are an arriving alien.

☒ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1) You are not a citizen or national of the United States;

2) You are a native of the Domincan Republic and a citizen of the Dominican Republic;

3) You entered the United States at an unknown time,in an unknown place and in an unknown manner;

4) You were not then admitted or paroled after inspection by an Immigration Officer;

5) You were, on July 25, 1995, convicted in the Dorchester District Court, Dorchester, Massachusetts for the offense of Possession with intent to Distribute Class B, to wit: Cocaine, in violation of Chapter 94C, Section 32 of the Massachusetts General Laws.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or who admits having committed, or admits committing acts which constitute the essential elements of, (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802).

Section 212(a)(2)(C) of the Immigration and Nationality Act, as amended, in that a consular or immigration officer knows or has reason to believe you are an alien who is or has been an illicit trafficker in any controlled substance or who is or been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:   ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
EOIR, JFK Federal Building, Rm 320, Government Center, Boston, MA 02203
(Complete Address of Immigration Court, Including Room Number, if any)

on ___To be calendar___ at _____   to show why you should not be removed from the United States based on the
      (Date)                    (Time)
charge(s) set forth above.

_____
Assistant District Director for INV
(Signature and Title of Issuing Officer)

Date: ___10/03/01___

_____
Boston, MA
(City and State)

See reverse for important information

## See reverse for important information.

ıg: Any statement you make may be used against you in removal proceedings.

tegistration: This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under ıl proceedings. You are required to carry it with you at all times.

sentation: If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or ndividual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient o secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be led with this Notice.

ıuct of the hearing: At the time of your hearing, you should bring with you any affidavits or other documents which you desire ve considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified sh translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such sses present at the hearing.

our hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you nadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence to cross examine any witnesses presented by the Government.

ı will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible uding the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the nigration judge.

ılure to appear: You are required to provide the INS, in writing, with your full mailing address and telephone number. You must ify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If u do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the vernment shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and ace designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the ımigration judge in your absence, and you may be arrested and detained by the INS.

## Request for Prompt Hearing

o expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing efore an immigration judge.

_____
(Signature of Respondent)

Before:

_____
(Signature and Title of INS Officer)

Date: _____

## Certificate of Service

This Notice to Appear was served on the respondent by me on __10/11/01__ , in the following manner and in
                                                              (Date)
compliance with section 239(a)(1)(F) of the Act:

☑ in person      ☐ by certified mail, return receipt requested      ☐ by regular mail

☑ Attached is a list of organizations and attorneys which provide free legal services.

☑ The alien was provided oral notice in the __ENGLISH__ language of the time and place of his or her
hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

## AFFIDAVIT OF MARIBEL ROBLES

I, Maribel Robles, hereby state and depose the following:

1.    My name is Maribel Robles. My date of birth is May 29, 1972. I currently reside at 20 Westminster Avenue, Apartment 2R, Hyde Park, MA 02136. My telephone number is 617-362-7995. I am Orlando Frias's girlfriend and the mother of his second son, Xavier Frias Robles. I have been a lawful permanent residence since 1995.

2.    Xavier was born on October 10, 2001. One day later, October 11, Orlando was arrested by the INS. Orlando was there for my labor and the delivery of our baby. It has been terrible without him. His name is not even on the birth certificate because he could not be there to show his identification.

3.    Orlando and I live together on Westminster Avenue in our two bedroom apartment. If he is released, he would come to live with me and our son. We have been living together since October 2000. We started dating in July 2000. I moved in with Orlando at his old apartment, 103 Draper Street, Apartment 1 in Dorchester. I met Orlando through our friend Altagracia Sosa.

4.    Orlando has two other children. They come to our apartment a lot. Sometimes they are with us for the whole week. He is with them a lot. They are usually with us on weekends and about three days during the week. His daughter's name is Joeleen and his son's name is Orlando. Joeleen is nine years old and Orlando is six.

5.    Orlando has never hit me and I am not afraid of him. I know there was some problem with the mother of his other two children. One time when I went with Orlando to pick up his children, she came after me with a knife, so I never went back there. I have never seen him hit his children either. I have never seen Orlando use drugs.

6.    Orlando was working as a mechanic on Adams Street in Dorchester. He worked Monday through Friday from seven in the morning until 4 in the evening. Sometimes he also worked on Saturdays. He worked very hard. He would work and then come home and we would go to Altagracia's house or she and her boyfriend would come over to our house.

7.    I used to work before Xavier was born. I had two jobs. I worked part time with Junico cleaning and I also helped a woman sell things at a flea market in Quincy.

8.    Orlando and I would pay the rent together and we would both help pay for the utilities. Usually whoever had money would pay the bills. Our rent is $1,000 per month. Orlando paid for food and would go food shopping, but I did the cooking. Orlando has paid for all of the baby's expenses. Orlando also gives the mother of his other children money every week to support them.



9       I stopped working in February this year, so Orlando was responsible for all of the bills and the rent. Without Orlando's help now, I do not have enough money to pay the rent. I do not know what I will do. The landlord has money so I won't have to pay the last month's rent, but after that I will have to move. I am very upset about this.

10.     Our baby has health problems. The doctor thinks there is something wrong with his heart, because it is too big. He had to have an electrocardiogram already and he is only one month old. I do not know exactly what the problem is with him, he has another appointment.

11.     Orlando is very close to his other children. He takes them to the park to play and to Chuck E. Cheese, the stores and the malls. The kids love the malls. He takes them in a ride in his car.

12.     Orlando owns a car. He has paid it off and he pays for the insurance. I do not know how to drive, so he would always drive us places. It has been really hard for us without him here, Altagracia has had to drive us when we need things.

13.     Orlando is a great father and husband. I know we are not legally married, but he is my husband. Getting around and money has been very, very hard since Orlando was arrested.


Signed under the pains and penalties of perjury this 29th day of October 2001. *16th day of November* ~~29th day of October~~ 2001.  AR

_Maritza Robles_

Commonwealth of Massachusetts    )
                                 )ss
County of Suffolk                )

Sworn and subscribed to before me this 16h day of November 2001.

_Notary Public_

[Notary Seal: Yohayra Quiles / Notary Public / Commonwealth of Massachusetts / My Commission Expires / March 31, 2006]

**CERTIFICATE OF TRANSLATION**

I certify that I am competent to translate from the English to the Spanish language, and that I accurately translated above Affidavit to Altagracia Sosa before she signed it.

November 16, 2001

_Yohayra Quiles_

Yohayra Quiles, 33 Franklin Hill Avenue, Apartment 295, Dorchester, MA 02124, 617-288-3851

DOCKET

| COURT DIVISION | NAME, ADDRESS AND ZIP CODE OF DEFENDANT | Waived |
| --- | --- | --- |
| DORCHESTER | T.N. ORLANDO ARIAS-ORTEGA | X Retained |
| CC#41228123 | Reinaldo Figueroa | Assigned |
| | 186 Boylston St. | TERMS OF RELEASE |
| | Jamaica Plain, MA | $500 CASH (ADD'L) |

PROCEEDING

| DATE | |
| --- | --- |
| | ☑ Arraigned before J. Caffey |
| | ☑ Advised of right to counsel |
| | ☐ Advised of right to drug exam |
| | ☐ Advised of right to bail review |
| JUL 25 1995 | ☐ Advised of right to F.I. Jury Trial |
| | ☑ Waives   ☐ Requests F.I. Jury Trial |
| | ☐ Advised of alien rights |
| | ☐ Warrant issued  ☐ Default warrant issued |
| | ☐ Removed  ☐ Warrant recalled |
| | ☐ Removed  ☐ Warrant recalled |

| DEF. DOB AND SEX | OFFENSE CODE(S) |
| --- | --- |
| 7/27/65 | 802/808b |
| DATE OF OFFENSE | PLACE OF OFFENSE |
| 4/1/94 | 89 Savin Hill Ave. |
| COMPLAINANT | POLICE DEPARTMENT (if applicable) |
| Det. Gallagher 1295 | DCU |
| DATE OF COMPLAINT | RETURN DATE AND TIME |
| 4/4/94 | Arrest for 4/5/94 |

**PRETRIAL CONFERENCE REPORT**
**PREPARED AND SUBMITTED BY**
**ALL PARTIES.**

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| a) .POSS.CLASS B SUB. W/INT. TO DISTRIB c94C s32A(a) | | | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION | |
| --- | --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | | 941661*H |
| | ☐ New Plea:  ✔ Admits suff. facts | | VCTM FEE  50. |
| JUL 25 1995 | FINDING  SF   JUDGE   Anderson | | TOTAL  50. |
| | | | CHECK  50. |
| | ☐ Cont. w/o finding until: | | CHANGE  0. |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | FINAL DISPOSITION  08/09/95 A123   15: | DATE |
| | | ☐ Discharged from probation | 3175 DPD |
| | | ☐ Dismissed at request of probation | |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| b) .POSS W/INT TO DIST DRUGS IN SCHOOL ZONE C94C S3 | | | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| JUL 25 1995 | FINDING  Dism   JUDGE   Anderson | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION  DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| | FINDING   JUDGE | |
| | **Clerk-Magistrate** | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION  DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| | FINDING   JUDGE | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION  DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| CONT TO | PURPOSE | CONT TO | PURPOSE | | DATE | TAPE NO | START | STOP |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 5-12-94 | PT Hand motion | | | | 4-5-94 | 529 | 223 | 2969 |
| 6-20-94 | Motion | 5-9-95 | | | 5-12-94 | 744 | 330 | 630 |
| 2-6-94 | Trial | S-12-95 | PTH | | 6-20-94 | 744 | 2128 |  |
| 8-10-94 | Trial | S-24-95 STATUS | | | | | 2396 | |
| 8-10-94 | Motion/Trial | | IN BOX | | 5-9-95 | 734 | 153 | 422 |

| DATE | DOCKET ENTRIES |
|------|----------------|
| 4/5/94 | Cash Bail 300.00 (sp) |
| 4/5/94 | Additional 500.00 Cash Bail (sp) |
| 5-9-94 | Motion to Suppress and Discovery filed, to be heard on pre-Trial date / AK. |
| 5-12-94 | PRETRIAL CONFERENCE REPORT SIGNED AND SUBMITTED BY ALL PARTIES.    to Judge Dolan |
| 8-8-94 | Def. f. Ct. / Papers take'.        JD. DC. |
| 8/10/94 | Common ready ( Sgt. Gallagher & squad A defaulted - girlfriend say's were for several district he went to Santo Domingo. |
| 8/10/94 | Default Warrant issued to DCU/C-11.        (gk). |
| 8/17/94 | Bail Forfeited : $300 / JC |
| 8/17/94 | Bail Forfeited : $500 / JC |
| 5-9-95 | Deft. bef Ct, wars enclosed (ss) |
| 5/9/95 | Mitt. issued |
| 5/17/95 | Pre Trial Conf. report filed |
| 5/17/95 | Mitt. issued |
| 5/22/95 | Spanish Interpreter Notified by Fax ret: 5/24/95   cr |
| MAY 24 1995 | C/6-19-95 for Mot. + Trial. / Dolan Spanish Interpretor needed. / Dolan-5 . |
| 05/24/95 | MITTIMUS ISSUED BY HELEN |
| 05/24/95 | INTERPRETER NOTIFIED RET: 06/19/95 (MAILED)        HELEN |
| 5/31/95 JUN 16, 1995 | $5000.00 cash bail JC 6-19-95 Status |
| JUN 19 1995 | held w/o bail - due to new arrest on 6/16/95 7-25-95 Trial - Zeman for - bail revoked |
| 6/21/95 | Bail returned $ 5,000 check # 8799 Sur. |

| DOCKET CONTINUATION | NAME OF DEFENDANT ORLANDO FRIAS–ORTEGA | DOCKET NUMBER 9407 CR 1661 |
|---|---|---|

| DATE | DOCKET ENTRIES |
|---|---|
| 6-19-95 | Mitt Issued Ret: 6-20-95 To Dedham District Court    cr |
| 6-19-95 | Mitt Issued By Cynthia ret: 7/25/95 |
| 7/14/95 | Spanish Interpreter Notified for 7/25/95  By Cynthia |
| JUL 25 1995 | Tape# 581-J1  2050-2155 , Tape#581-J1 3500-38: |
| | Tape# 582-J1  18-  337 |
| | |
| | |
| JUL 25 1995 | DEFENDENT ADVISED IN OPEN COURT THAT |
| | CONVICTION COULD RESULT IN DEPORTATION, |
| | ~~EXCLUSION, OR DENIAL OF NATURALIZATION~~ |
| | IF DEFENDANT IS NOT A UNITED STATES |
| | CITIZEN. |
| 7/25/95 | 2yean 14 of C. Comm. Anderson,1. |
| 07/25/95 | MITITMUS ISSUED BY HELEN |
| 4-27-99 | issue amended Abstract to reflect true |
| | name Orlando Frias ortega DOB 10/16/67 |
| | SS# 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 . |
| | |
| | |
| | |
| | |
| | Clerk-Magistate |
| | |

PAGE #3

# DOCKET

0567 CR 4430 gmk

| COURT DIVISION | NAME, ADDRESS AND ZIP CODE OF DEFENDANT | TERMS OF RELEASE |
| --- | --- | --- |
| DORCHESTER | | ☐ Waived ☐ Retained |
| .CC#50-279613 | | ☒ Assigned STOZ WVA |

NAME, ADDRESS AND ZIP CODE OF DEFENDANT

Orlando Ortega
155 Williams Street
Jamaica Plain, MA    02130

| DEF. DOB AND SEX | OFFENSE CODE(S) |
| --- | --- |
| 10/16/67 | 101A,807,832 |
| DATE OF OFFENSE | PLACE OF OFFENSE |
| 06/15/95 | Adams & Linden Sts. |
| COMPLAINANT | POLICE DEPARTMENT (if applicable) |
| Sgt. Daley et.al. | C-11 #6560 |
| DATE OF COMPLAINT | RETURN DATE AND TIME |
| 06/19/95 | ARREST |

| DATE | PROCEEDING |
| --- | --- |
| | ☐ Arraigned before J. |
| | ☐ Advised of right to counsel |
| | ☐ Advised of right to drug exam |
| | ☐ Advised of right to bail review |
| | ☐ Advised of right to F.I. Jury Trial |
| | ☐ Waives  ☐ Requests F.I. Jury Trial |
| | ☐ Advised of alien rights |
| 9/20/95 | ☐ Warrant issued ☒ Default warrant issued |
| 12/4/95 | ☐ Default removed ☐ Warrant recalled |
| | ☐ Warrant issued ☐ Default warrant issued |
| | ☐ Default removed ☐ Warrant recalled |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| A. OP MV GIVE FALSE NAME P.O. C90 S25 | | | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| 2-16-96 | FINDING  JUDGE Walker | DRC |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION          DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| B. MFG/DISTRIB/DISPENSE CLASS B SUB. c94C s32A | 50VWF | Drug Fee - Def Until Relea | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| 2-16-96 | FINDING  JUDGE Walker  Guilty | 1 Yr Hc SS 2½ Years · 8-16-98 |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION          DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| C. CONSPIRACY TO VIOLATE CONTR. SUB. LAWS c94c | | | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| 2-16-96 | FINDING  JUDGE Walker | DRC |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION          DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |
| | | | | |

| DATE | PLEA | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ Not Guilty  ☐ Guilty  ☐ Nolo | |
| | ☐ New Plea:  ☐ Admits suff. facts | |
| | FINDING  JUDGE | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION          DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| CONT TO | PURPOSE | CONT. TO | PURPOSE | | DATE | TAPE NO | START | STOP |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 10-11-95 | Motion | 5/3/96 | SH | | 2-16-96 | 0334 | 1067 | 1635 |
| 12/14/95 | STATUS | 5-23-96 | S.H. | | 4/19/96 | 141 | | |
| 2-15-96 | PTH | | | | | | | |
| 2-16-96 | PTH | | | | | | | |
| 4/3/96 | SH | | | | | | | |

| DATE | DOCKET ENTRIES |
|---|---|
| 6/2/95 | Bail for 4 any |
| 6-20-95 | (ue.s 12) |
| 7/12/95 | Cash Bal 500.00 SP |
| 7/20/95 | Bail Forfeited 0,500.00 JP/ |
| 8/22/95 | MOTION FOR Default Removal Letter To SCHC RECEIVED, ON LIST FOR 10-11-95 |
| 8.26-95 | warint recalled and removed, was computer helpdesk correction (au) |
| 12/15/95 | Habe issued to Suffolk County H of C. Ret: 02/15/96 @ 8:30 AM. Th. |
| 2/15/96 | New Habe issue ret 2/16/96 |
| 2-15-96 | Case cont for Tomorrow 2-16-96 |
| 2-16-96 | Count B. C. 1 Yr HC SS 2½ years 8-16-98 $50 V w F \ Drug Fee To be Paid After Release Deportation Warning given — J. Walker |
| 2/26/96 | abstract to p |
| 2-23-96 | Warrant Recalled was c |
| 5 23 96 | Δ'S waives Right to to Surrender Hearing - Sullivan J Cause Found for Violation - SS Revoked Δ commi, 1 Yr HC Commi, conc w/ sont, New Habe Scrum — Sullivan J |
| 05/23/96 | Mitt. issued (AH) |
| | CLOSED MAY 24 1996 DATE         BY |
| 6.2.99 | Fax over abstract to reg (Ch.) |
| 7/31/01 | Copy of Abstract faxed to Registry |
| 8-6-01 | Fax Abstract to Δ and registry |
| 8-7-01 | Faxed docket to Julie at registry 617-351-9360 |

| WAIVER OF JURY TRIAL; DEFENSE COUNSEL'S CERTIFICATE | DOCKET NUMBER | Trial Court of Massachusetts District Court Department |
|---|---|---|

COURT DIVISION

**Dorchester District Court**
**450 Washington Street**
**Dorchester, MA  02124**

COMMONWEALTH VS _____

NAME OF DEFENDANT

## WAIVER OF RIGHT TO BE TRIED BY JURY
### (G.L. c. 263, s. 6)

I, the above-named defendant, have been informed of my right to be tried by a jury. I understand that right. I have decided to waive that right.  I have chosen to plead guilty or admit to a finding of guilty.

_____          *Orlando Ortega*
DATE                                         SIGNATURE  OF   DEFENDANT

## DEFENSE COUNSEL'S CERTIFICATE
### (G.L. c. 218, s. 26A)

I, the undersigned counsel for the above-named defendant in the case captioned above, certify that with regard to the waiver of the right to jury trial, I have explained the following to said defendant:

That the jury consists of members of the community;

That the defendant may participate in their selection;

That the verdict of the jury must be unanimous; and

That the jury must decide guilt or innocence while the judge makes rulings of law in the course of the trial and instructs the jury on the law, and imposes sentence in case of guilt.

_____          *John O. Stitz*
DATE                                         SIGNATURE OF DEFENSE COUNSEL

DC-CR 22 (1/94)(reverse)

| TENDER OF PLEA OR ADMISSION | DOCKET NUMBER<br>95CR4430 | Trial Court of Massachusetts<br>District Court Department |
| --- | --- | --- |

COURT DIVISION

Dorchester District Court
450 Washington Street
Dorchester, MA 02124

COMMONWEALTH VS _Orlando Ortega_
NAME OF DEFENDANT

## TENDER OF PLEA OR ADMISSION

**PART I:** To be completed, where possible, prior to the Pretrial Hearing, subscribed by both counsel and submitted to the court by the defendant at that hearing.

Defendant in this case hereby tenders the following: ☐ PLEA OF GUILTY  ☒ ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILTY

conditioned on the following dispositional terms. [Include all proposed terms (guilty finding, finding of sufficient facts, continued without finding, fine, costs, probation, restitution, dismissal, etc.).] Counts/offenses as listed on complaint:

Count/offense 2  G /YR SS FOR 2½ YEARS, ~~~~

Count/offense 1  DISMISSED   PROBATION

Count/offense 3  DISMISSED

Count/offense 4  V/W fee, drug assessment

(Attach an additional sheet, if necessary)

The above-listed terms are submitted for the court's consideration ☒ WITH ☐ WITHOUT the agreement of the Commonwealth.

Signatures:

_____  2-15-96   _____  2/15/96
Defense Counsel    Date    Assistant District Attorney    Date

**PART II:** To be completed by the Court.

### COURT'S RULING

The court ☒ ACCEPTS the Plea/Admission tendered on the terms set forth above, and will impose sentence in accordance with such terms, subject to submission of defendant's written jury waiver (see reverse side), completion of the required colloquy, determination of factual basis and notice of alien rights.

The court ☐ REJECTS the dispositional terms set forth above and, in accordance with Mass R. Crim. P. 12(c)(6), will set forth the dispositional terms it would find acceptable.

### DEFENDANT'S DECISION UPON REJECTION OF TERMS

Defendant ☐ WITHDRAWS tendered Plea/Admission; Pretrial Hearing to be completed and trial date scheduled, if necessary.

Defendant ☐ ACCEPTS terms set forth by the Court; Plea/Admission to be accepted by court and said dispositional terms imposed, subject to submission of defendant's written jury waiver (see reverse side), completion of the required colloquy, determination of factual basis and notice of alien rights.

_____
Judge

(Final dispositional terms to be announced on the record and recorded on case docket sheet)

DC-CR 22 (1/94)

# Certificate

## of

# Recognition

is Awarded this Certificate of Notable Accomplishment in
Recognition of his Faithful Participation in the

## 90 Day Recovery Program

at the Suffolk County House of Correction.

This _____ day of _____, 1995

Program Facilitator

Director of Recovery Program



JOHN M. BRASSIL
SPECIAL SHERIFF

ROBERT C. RUFO
SHERIFF